IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GARY A. SMITH                                                                                          PLAINTIFF

v.                      Civil No. 4:22-cv-04005-SOH-BAB

WARDEN WALKER, Miller County Detention
Center (MCDC); SERGEANT GOLDEN, MCDC;
and MILLER COUNTY, ARKANSAS                                                                DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Gary A. Smith ("Smith"), currently an inmate of the Estelle Unit of the Texas Department of Criminal Justice, filed this civil rights action under 42 U.S.C. § 1983. Smith proceeds *pro se* and *in forma pauperis*. While he was incarcerated in the Miller County Detention Center ("MCDC") located in Texarkana, Arkansas, Smith maintains Defendants violated his federal constitutional rights in two ways. First, Smith contends his due process rights were violated when he was placed in administrative segregation without notice or a hearing. Second, Smith contends the Defendants failed to protect him from being brutally raped by a fellow inmate with known violent propensities.

Defendants have filed a Motion for Summary Judgment. (ECF No. 63). Smith filed his response.[1] (ECF No. 80). Defendants filed a reply, (ECF No. 83). The Motion is ready for decision. The Honorable Susan O. Hickey, Chief United States District Judge, referred the Motion to the undersigned for the purpose of making a Report and Recommendation. 28 U.S.C.

---

[1] The Court notes that Smith's response is thorough. He cites to relevant case law and provides a number of exhibits, including his own affidavit, to support his legal arguments.

1

§§ 636(b)(1) and (3).

## I. BACKGROUND

On April 6, 2021, Smith was arrested on a parole violation warrant out of Texas and various pending criminal charges in Miller County, Arkansas.[2] (ECF No. 82-1 at 2).[3] He was booked into the MCDC and initially placed in a pod for inmates over 40 years of age. (ECF No. 63-2 at 11).

On April 14, 2021,[4] Smith who had been complaining of chest pains was escorted by to the local hospital which was located in Texas.[5] (ECF No. 63-1 at 1);(ECF No. 63-2 at 13). When Smith was going to be released, Defendants maintain he assaulted an officer and attempted to escape. (ECF No. 63-1 at 1). Because of the drugs he had been given, including morphine, Smith contends that he stumbled while still in the examination room and put his hands out to catch himself. (ECF No. 82-1 at 3). The officer assumed Smith was attempting to flee, and tackled Smith as he "was falling." *Id.*; *see also* (ECF No. 63-2 at 15). As the officer tackled Smith, he hit his head. (ECF No. 82-1 at 3); (ECF No. 63-2 at 13). Sergeant Golden escorted Smith back to the MCDC. (ECF No. 63-2 at 13); (ECF No. 82-1 at 3).

Smith believes Sergeant Golden treated him inappropriately during the escort. (ECF No. 63-2 at 14). When they got into the patrol car to go back to the MCDC, Smith testified that

---

[2] Defendants agree Smith was in pretrial status for purposes of the criminal charges pending in Miller County. (ECF No. 63 at 1).
[3] All citations to the record are to the CM/ECF document and page number rather than to the alphabetical or numerical designations utilized by the parties.
[4] During Smith's deposition, the parties initially refer to the incidents as having occurred in May. However, they later clarify that the events occurred in April. (ECF No. 63-2 at 19-20).
[5] The City of Texarkana lies on the border of Arkansas and Texas. Texarkana, Arkansas, is located in Miller County.

Sergeant Golden said: "You really fucked up." *Id.* Once they were in the booking area Sergeant Golden told the waiting officer to put Smith in "Max Delta 901, where he'll have no alibi." *Id.* Smith "didn't think much of [the statement] at the time." *Id.* at 16. However, he believes Sergeant Golden "expected something to happen [in the cell]." *Id.* at 27.

According to Captain Adams, Smith's actions required him to "be placed on administrative segregation until the events could be investigated as the safety and security of the inmates and staff was at issue." (ECF No. 63-1 at 1). Texas law enforcement was informed of the incident and "warrants were drafted" and a hold placed on Smith by Texas. *Id.* When Smith returned to the MCDC, "he was placed immediately on administrative segregation locked down." *Id.* Smith never received a disciplinary for the incident. (ECF No. 63-2 at 13).

At the time, the MCDC had "two administrative segregation units—Max Delta and Max Echo. Max Delta had 28 beds. Max Echo had 11-12 beds." (ECF No. 63-1 at 2). Two of the cells in Max Echo "can be solitary cells but are reserved for extreme chronic disciplinary or an extreme mental state." *Id.* The MCDC prefers not to isolate inmates unless it is necessary. *Id.*

Smith was placed in a cell with another inmate, Charles Anderson ("Anderson"). (ECF No. 63-1 at 2). Captain Adams states "[t]here was not any rationale for placing Smith with Charles Anderson other than the bed in the cell was open." *Id.* Anderson was older than Smith and was charged with the rape of a younger female. *Id.* "Anderson had been placed previously in general population with access to inmates and in administrative segregation previously with a cell mate. There had been no previous issues with him threatening or attacking any inmates, or any suggestion that he would attack another inmate." *Id.* Finally, Captain Adams states "[t]here was no classification reason that would have prevent [Anderson] from being placed with Smith."

3

*Id.*

In contrast, Smith has submitted Anderson's detail pages which show the following violations prior to the rape at issue here: 3/13/2020—fighting—charged with first or second degree assault; 6/16/2020—refusing to obey orders, displaying disrespectful behavior, and threatening or intimidating any person; 9/1/2020—disorderly conduct and displaying disrespectful behavior; 9/15/2020—refusing to obey orders and disrespectful behavior; 10/27/2020—fighting—charged with first or second degree assault; 12/27/2020—refusing to obey orders; 3/7/2021—refusing to obey orders and two charges of displaying disrespectful conduct; 3/24/2021—disrupting the orderly running of the jail. (ECF No. 82-2 at 1-2).

On the evening of April 14th, Smith had no interactions with Anderson that gave him reason to fear for his safety. (ECF No. 63-2 at 16). Nothing out of the ordinary occurred on April 15th. *Id.* However, when Smith was given his hour out of the cell that day he noticed the cell next to it was empty. *Id.* at 16 & 28. On April 16th, nothing out of ordinary occurred and Smith did not fear for his safety. *Id.* at 16-17. On April 17, before Smith went to bed, Anderson did not do or say anything that made Smith fear for his safety. *Id.* If Smith had suspected something would occur, he would have alerted staff. *Id.*

Late in the afternoon or early evening of April 17, 2021, Smith went to sleep on his bunk. (ECF No. 63-2 at 18). Anderson hit Smith and he was unconscious most of the time only waking when he heard a nurse speaking to a guard and asking why Anderson's feet were tied to the bunk. *Id.; see also* (ECF No. 82-8 (notes of Nurse Lisa Davidson)). Smith was found lying face down with his hands and feet bound, tied to the bed in three places, and gagged. (ECF No. 82-7 at 1-2). Smith had been brutally attacked and raped by Anderson. Smith was taken to the emergency

4

room where they did a rape kit and gave him medical attention. (ECF No. 63-2 at 19). Smith suffered a head injury, facial contusions, broken ribs, and anal tearing. (ECF No. 82-8 at 1); (ECF No. 81 at 2).

When Smith was released from the emergency room, he was put into protective custody on medical observation. (ECF No. 63-2 at 20). Smith was offered counseling and after some hesitation due to embarrassment was evaluated on April 23rd and 26th. *Id.* at 21. Smith bonded out of the MCDC on April 28th and was extradited to Bowie County, Texas. *Id.*

Miller County officials investigated the rape pursuant to the Prison Rape Elimination Act ("PREA").[6] (ECF No. 63-2 at 19). Smith was advised that as a result of the investigation charges would be brought against Anderson. *Id.* Anderson was charged with rape and second-degree battery. (ECF No. 82-2 at 3).

After his incarceration in the Texas prison system, Smith again received counseling. (ECF No. 63-2 at 22). Smith testified he is on depression medication for severe PTSD. *Id.* at 23. Smith indicates he isolates himself, has "bad night tremors, bad nightmares, wak[es] up in cold sweats," and every face he sees is Anderson's. *Id.*

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[6] There is no private cause of action under PREA. *See e.g., Johnson v. Garrison,* 859 F. App'x 863, 864 (10th Cir. 2021); *Bowens v. Wetzel,* 674 F. App'x 133, 137 (3d Cir. 2017); *Krieg v. Steele*, 599 F. App'x 213, 232-33 (5th Cir. 2015); *Wilmoth v. Sharp*, No. 6:15-cv-06057, 2018 WL 1092031, *3 (W.D. Ark. Feb. 27, 2018).

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants have moved for summary judgment on the following grounds: (1) there is no proof of personal involvement on the part of Warden Walker or Sergeant Golden; (2) Defendants were not deliberately indifferent to a substantial risk to Smith's health and safety; (3) they are entitled to qualified immunity; (4) there is no basis for official capacity liability; and (5) Smith failed to exhaust his administrative remedies. The Court will address the last argument first since failure to exhaust administrative remedies is a defense which if proven results in the dismissal of

6

the case before consideration of the merits.

### A. Exhaustion of Administrative Remedies

Prisoners are required to exhaust the grievance procedures of the detention facility they are assigned to prior to filing a § 1983 suit. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 218 (2007). The exhaustion requirement allows a prison to address complaints before being subject to suit, reduces litigation when complaints are resolved, and provides a useful record if suit is filed. *Jones*, 549 U.S. at 219.

Specifically, 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones*, the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones*, 549 U.S. at 218 (cleaned up). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any

7

remedies that prison officials prevent a prisoner from utilizing are not considered available)). The exceptions are few and far between. An inmate's own subjective belief about the effectiveness of the grievance procedure is not an excuse for failure to follow its provisions. *See e.g., Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000).

Defendants have not provided the Court with the MCDC grievance procedure. Rather, they maintain Smith has admitted he failed to complete the grievance procedure citing the Amended Complaint and the Second Amended Complaint. (ECF Nos. 7 & 13). In the Amended Complaints, Smith says he filed a Step One grievance on the detention center kiosk but was extradited three days later. (ECF No. 7 at 2)(ECF No. 13 at 2). Smith states he never got an answer to the Step One grievance or a chance to file a Step Two Grievance. *Id.*

In opposition, Smith asserts he did attempt to file a Step Two grievance by reporting the rape to the Bowie County Sheriff's Office. (ECF No. 82-1 at 7). In response, Bowie County was advised that Captain Adams had closed the grievance. *Id.* Smith provides the Court with a copy of his actual grievance which shows it was closed on May 3, 2021, because "[i]nmate no longer here." (ECF No. 82-4 at 4). Additionally, on June 10, 2021, the Bowie County Sheriff's Office grievance coordinator wrote the MCDC officials stating Smith had indicated he was sexually assaulted. *Id.* at 5. The letter also noted Smith wanted to file charges. *Id.* The Court believes the facts and circumstances are sufficient to show Smith was prevented from utilizing the procedure and/or the Defendants themselves did not follow the grievance procedure. In fact, the Court has serious doubts that the grievance procedure even applies once an inmate is no longer detained at the facility—as is evidenced by the closing of Smith's grievance with the notation inmate no longer here. Defendants are not entitled to summary judgment on the basis of

8

exhaustion of administrative remedies.

## B. No Personal Involvement

Liability under § 1983 requires personal involvement in the constitutional violations. A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 566 U.S. 662, 676 (2009); *see also Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights").

Defendants correctly argue they cannot be held liable under § 1983 absent a finding that they were personally involved in the alleged constitutional violations. Defendants maintain Smith "never alleges that Sergeant Golden or Warden Walker had any knowledge of the possibility of an impending sexual assault or battery from the perpetrating cell mate against Plaintiff." (ECF No. 64 at 8). The record is clear that Sergeant Golden was personally involved in assigning Smith to a cell occupied by Anderson.

Although Smith does not argue Warden Walker was directly involved in his initial placement in Anderson's cell, Smith does argue his placement was "orchestrated by supervisory officials." (ECF No. 80 at 1). Further, Smith maintains Warden Walker was aware of the inadequate classification system; Smith's placement in administrative segregation without due process; the understaffing of the facility in general and the max pods in particular; Anderson's disciplinary history and known propensities for violence; and Anderson's pending mental evaluation. It is true that "a supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994). However, supervisors can "incur liability . . . when their corrective inaction amounts to deliberate

9

indifference or tacit authorization of the violative practices." *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir. 1993); *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir. 1987)("when supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates"). In Smith's opinion, Warden Walker "should have investigated why [he] was put in that cell with a—with a man that is mentally—was already—he was being mentally evaluated for his prior cases." (ECF No. 63-2 at 30).

Defendants are not entitled to summary judgment on this ground. The Court believes that there is a sufficient basis to find personal involvement on the part of the Defendants. Defendants are not entitled to summary judgment on this ground. Therefore, the Court turns to an analysis of the merits of Smith's claims.

### C. Placement in Administrative Segregation

Smith maintains he was improperly placed on administrative segregation without being issued a disciplinary or other process. As soon as Smith returned to the MCDC from the hospital, "he was placed immediately on administrative segregation locked down." (ECF No. 63-1 at 1). Defendants have not separately addressed this claim; in fact, it is Defendants' position that Smith has asserted a single claim—a failure to protect claim. (ECF No. 64 at 7-8).[7]

---

[7] The Court has read Smith's Amended Complaint (ECF No. 7) and Second Amended Complaint (ECF No. 13), together, as constituting his claims. *See Topchian v. JPMorgan Chase Bank, N.A.,* 760 F.3d 843, 849 (8th Cir. 2014)("A *pro se* complaint must be liberally construed, . . . and *pro se* litigants held to a lesser pleading standard than other parties")(cleaned up); *Kiir v. N.D. Pub. Health,* 651 Fed. Appx. 567, 568 (8th Cir. 2016)(amended complaint "intended to supplement, rather than supplant, the original complaint," should be read together); *Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007)(district court should have read the original and amended complaints together as plaintiff intended). The Court notes Defendants read the Amended Complaints together in advancing their argument Smith had failed to exhaust his administrative remedies.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). In determining whether "the conditions of pretrial detention are unconstitutionally punitive, [the court must] review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi,* 601 F.3d 805, 809 (8th Cir. 2010). Specifically,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* (quoting *Bell,* 441 U.S. at 538-39)(cleaned up).

In *Whitley v. Albers,* 475 U.S. 312 (1986), the Supreme Court stated that:

> Prison administrators . . . should be accorded wide-ranging deference in the adopting and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventative measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

*Id.* at 321-322 (cleaned up).

Smith was placed in administrative segregation following an alleged assault on an officer. While Smith contends the entire incident was due to his being unsteady on his feet following the administration of pain medication, it is undisputed that an officer was injured. Further, Smith was

11

being charged in Texas as a result of the incident. Clearly, there was a legitimate governmental interest—the safety and security of staff and other detainees—in assigning Smith to administrative segregation. No process is due when the decision to place an inmate in administrative segregation is based on legitimate interests such as the protection of staff and other detainees. *See e.g., Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir. 1983)("As long as there is a procedure for reviewing periodically the situations of inmates who are in administration segregation . . . due process is satisfied."). There is no genuine issue of material fact as to whether Defendants confined Smith to administrative segregation for punitive reasons rather than for institutional security and thus Defendants are entitled to summary judgment on this claim. Further, having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### D. Failure to Protect

"Because being subjected to violent assault is not 'part of the penalty that criminal offenders [must] pay for their offenses,' *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), '[t]he Eighth Amendment[8] imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners.'" *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (quoting *Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998)) (cleaned up). Prison officials must "take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S.

---

[8] Because Smith was a pretrial detainee, his claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. However, the Court of Appeals for the Eighth Circuit has applied the Eighth Amendment to failure to protect claims whether brought by pretrial detainees or convicted prisoners. *See e.g., Perry v. Adams,* 993 F.3d 584, 587 (8th Cir. 2021).

at 832. However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

To prevail on a failure to protect claim, Smith must establish: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted).

The first prong is an objective requirement to ensure the deprivation of a constitutional right is sufficiently serious. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). "The deprivation is objectively, sufficiently serious, under the first requirement when the official's failure to protect resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm." *Id*. (cleaned up).

The second prong, however, is subjective, requiring Smith to show the named official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Holden*, 663 F.3d at 341 (quoting *Farmer*, 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007).

Defendants maintain "[t]his was an attack that no one, including Gary Smith, saw coming, and the surprise nature of the attack is why Defendants are entitled to summary judgment." (ECF No. 64 at 2). In support, Defendants offer the affidavit of Captain Adams and Smith's deposition. Defendants begin by pointing out Smith himself was not worried about his safety and the attack came as a surprise to him. (ECF No. 63-2 at 17). Defendants next stress Captain Adams' statement that there had been no previous issues with Anderson "threatening or attacking any

13

inmates, or any suggestion that he would attack another inmate." (ECF No. 63-1 at 2). Additionally, according to Captain Adams, "[t]here was no classification reason that would have prevented [Anderson] from being placed with Smith." *Id.*

Smith asks the Court to focus on the following: the fact that Sergeant Golden directed officers to place Smith in the cell with a known sex offender—Anderson—where Smith "would have no alibi;" Anderson's known propensity for violence and for repeated disciplinary violations; Smith's improper or inadequate classification such that it allowed him to be placed with Anderson; a single deputy being placed in charge of both Max units, as shown by the shift supervisor reports, despite the policy requiring at "least one certified correctional officer present at all times to provide direct supervision of inmates;[9]" the fact that Anderson was incarcerated on a charge of rape;[10] the lack of separation between pretrial detainees being held on violent as opposed to non-violent crimes; and the manner in which he was tied to a bunk, as shown by pictures, which was observed from outside the cell by a nurse but not visually observed by detention center staff who were responsible for making rounds every hour.

In *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020), the Court of Appeals for the Eighth Circuit noted that most of their prior failure-to-protect cases arising out of "an inmate-on-inmate assault have involved an attacker who was known to be a volatile, dangerous man; or who previously threatened or fought the victim; or a victim who should have been better protected because of known inmate threats." *Id.* at 976 (citations omitted). In those cases, the Eighth Circuit noted that the "substantial risk of serious harm was obvious, and defendants' liability

---

[9] Violations of a detention center's own policies does not by itself state a violation of the Constitution. *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003).
[10] Defendants note this charge dealt with a minor female rather than a grown male.

14

turned on the subjective issue of deliberate indifference (unless the victim had denied or not disclosed the prior threat or altercation to prison officials)." *Id.*

In *Vandevender*, the Eighth Circuit noted there was no evidence that the attacker, Latimer, had threatened Vandevender or any other inmate; that Latimer was known to be a violent, volatile inmate; that Latimer had previously argued or fought with Vandevender or that the two even knew each other; or that either Latimer or Vandevender had recently been in protective custody or in a restrictive status such as administrative segregation. *Vandevender*, 970 F.3d at 976. Without any of these factors present, the Eighth Circuit held that Vandevender was the "unfortunate victim of a surprise attack by a fellow inmate." *Id.* In cases involving surprise attacks, the Eighth Circuit noted it had upheld the grant of qualified immunity to prison officials.

As noted previously, Defendants maintain that Smith's own inability to anticipate the surprise attack defeats liability. *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) ("as Patterson alleges that the defendants failed to protect him from a specific threated posed by Black, his own inability to anticipate the surprise attack and his decision not to report his altercation with Black the previous afternoon defeat liability"). The Court agrees the evidence presented does not suggest the existence of a *specific* risk that Anderson would attack Smith.

The surprise attack analysis does not end the Court's inquiry in this case. This is because Smith has presented evidence tending to establish that Anderson posed a non-specific or general risk of harm to the inmates he was housed with. Specifically, Smith has advanced evidence that Anderson had both a past history of fighting with fellow inmates, threatening or intimidating others, and of refusing to obey the orders of staff as well as disrupting the running of the facility (ECF No. 82-2); Anderson had been placed in restrictive housing; Anderson had been booked in

15

on a violent crime. Smith also stresses the lack of adequate staffing in the Max pods. Given this evidence, the Court believes a reasonable trier of fact could conclude Smith was objectively incarcerated under conditions constituting a substantial risk of inmate attacks.

The more difficult question is whether the subjective prong of the failure-to-protect claim has been met. In other words, has Smith shown a genuine issue of material fact exists as to whether each of the named Defendants was deliberately indifferent to a general risk of harm to inmates.[11] "[A]n obvious risk of harm may justify an inference that prison officials subjectively disregarded that risk. But to make such an inference, there must be some evidence showing that the defendants were exposed to the underlying facts revealing that risk." *Patterson*, 902 F.3d at 852 (citing *Farmer*, 511 U.S. at 842). For example, if there was evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" and evidence that the named Defendant was exposed "to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id.* (quoting *Farmer*, 511 U.S. at 842).

Despite the curious gaps in Defendants' evidence, and viewing the evidence presented by Smith in the light most favorable to him, the Court is nevertheless forced to conclude that no inference could be drawn that the named Defendants exhibited deliberate indifference to an obvious risk of harm to inmates caused by Anderson's presence. In other words, no genuine issue of material fact exists as to whether the subjective knowledge standard has been met. There is no evidence that inmate rape was common in this facility; no evidence that Anderson had sexually

---

[11] Unfortunately, the Court has not been provided with an affidavit from either Defendant.

16

assaulted—or engaged in inappropriate conduct with—inmates other than apparently being involved in fights which are common in detention centers; no evidence Anderson had been violent toward other cell-mates. *Webb v. Lawrence Cnty.,* 144 F.3d 1131, 1135 (8th Cir. 1998). Further, having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

Having so found, the Court recognizes that this violent rape has profoundly affected Smith.

### E. Official Capacity Liability

An official capacity claim is considered a claim against the employing governmental entity, here, Miller County. *Crawford v. Van Buren Cnty.,* 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., Mo.,* 829 F.3d 695, 699 (8th Cir. 2016)(citations omitted).

But, having previously found no individual Defendant violated Smith's federal constitutional rights no official capacity liability exists. *See e.g., Ivey v. Audrain Cnty., Mo.*, 968 F.3d 845, 851 (8th Cir. 2020) (if the individual officers are entitled to qualified immunity under the first prong of the analysis, *i.e.*, no evidence of a constitutional violation, then the county cannot be held liable); *Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010) (holding that there was no need to consider a pretrial detainee's failure to protect claim against the city when there was no evidence that any of the individual officers committed a constitutional violation). There is no basis for official capacity liability.

## IV. CONCLUSION

For these reasons, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 63) be **GRANTED** and this case be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of May 2023.

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE