IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GARY A. SMITH                                                                                              PLAINTIFF

v.                                              Case No. 4:22-cv-4005

WARDEN WALKER, *et al*.                                                                         DEFENDANTS

**ORDER**

Before the Court is a Report and Recommendation ("R&R") issued by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 84. Judge Bryant recommends that Defendants' Motion for Summary Judgment (ECF No. 63) be granted. Plaintiff Gary A. Smith ("Smith") has filed objections. ECF No. 90. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

On April 6, 2021, Plaintiff Smith was arrested and booked into the Miller County Detention Center ("MCDC").[1] Plaintiff was initially confined in a pod designated for detainees over 40 years of age. After complaining of chest pains, Plaintiff was transported to a local hospital for treatment and evaluation on April 14, 2021. While at the hospital, Miller County officials assert that Plaintiff attempted to escape and that an escorting officer was injured subduing Plaintiff. Plaintiff contends that the morphine administered to him for his pain caused him to become disoriented and that his movements were erroneously perceived as an attempt to escape.

Defendant Sergeant Golden ("Golden") escorted Plaintiff back to the MCDC from the hospital. Plaintiff asserts that Golden told him "You really fucked up" during his ride back in the patrol car. When back at the MCDC, Plaintiff asserts that Golden told another officer to place him

---

[1] Plaintiff was arrested for pending criminal charges in Miller County, Arkansas, in addition to a warrant out of Texas regarding violation of his parole.

in "Max Delta 901, where he'll have no alibi." MCDC staff then placed Plaintiff in an administrative segregation unit because of the incident at the hospital. Staff placed Plaintiff in a cell with Charles Anderson ("Anderson"), a detainee older than Plaintiff who was charged with raping a child.

At the onset of Plaintiff's placement with Anderson on April 14, Plaintiff states there were no interactions with Anderson that raised alarm or caused him to fear for his safety. Plaintiff similarly states that there was no indication of danger on April 15, 16, or 17, though Plaintiff states that he noticed that the cell next to the one he shared with Anderson was empty. In the late afternoon of April 17, while Plaintiff was asleep on his cell bed, Anderson attacked Plaintiff and rendered Plaintiff unconscious.

Plaintiff states that he awoke later that evening to the voice of a staff nurse outside of his cell asking a guard why Plaintiff's feet were tied to his bed. The staff found Plaintiff face down on his bed with his feet, neck, and hands bound and a gag in his mouth. Anderson had bound and raped Plaintiff while he was unconscious. Staff transported Plaintiff to an emergency room where he received medical attention and a rape kit was conducted. Plaintiff's medical evaluation concluded that he had suffered a head injury, facial contusions, broken ribs, and anal tearing.

After his release from the emergency room, Plaintiff entered protective custody on medical observation in the MCDC. MCDC staff informed Plaintiff that an investigation pursuant to the Prison Rape Elimination Act ("PREA") was being conducted. Anderson was eventually charged with rape and second-degree battery. Plaintiff bonded out of the MCDC on April 28, 2021, and was extradited to Texas. He is currently confined at the Texas Department of Criminal Justice, Michael Unit, in Tennessee Colony, Texas.

Plaintiff filed his initial Complaint on January 21, 2022, bringing claims against Defendants Golden, MCDC Warden Walker, and Miller County, Arkansas. ECF No. 1. Plaintiff later submitted an Amended Complaint, bringing claims pursuant to 41 U.S.C. § 1983 that alleged Defendants violated his right to be free from cruel and unusual punishment and his right to due process. ECF No. 7. Plaintiff then filed a Second Amended Complaint, which also asserted that Defendants violated his rights under the PREA. ECF No. 13. Plaintiff generally alleges that his rights were violated by being placed in a cell with Anderson, which ultimately resulted in the violent assault against Plaintiff. Plaintiff brings the claims against Defendants Golden and Walker in their individual and official capacities and against Miller County, Arkansas in its official capacity.

Defendants moved for summary judgment on October 17, 2022. ECF No. 63. Defendants generally argue that Plaintiff failed to exhaust his administrative remedies, that the evidence cannot show that Defendants were personally involved in the alleged violations, that the evidence cannot establish that Defendants were deliberately indifferent to a substantial risk to Plaintiff's safety, and that there is no basis for Plaintiff's official capacity claims. Plaintiff responded in opposition, generally arguing that there are genuine questions regarding the risk Anderson posed and the Defendants' awareness of that risk. ECF No. 80. Defendants replied, arguing that Plaintiff has not presented evidence to create any genuine question of fact for his claims and that his allegations rest upon pure speculation. ECF No. 83.

Judge Bryant issued the instant R&R on May 1, 2023. ECF No. 84. Judge Bryant ultimately recommends that Defendants be granted summary judgment because there is no genuine question regarding whether Defendants were deliberately indifferent to a substantial risk to

Plaintiff's safety. Plaintiff objected, generally arguing that the factual record indicates there is a genuine question regarding his claims. ECF No. 90.

## II. STANDARD OF REVIEW

### A. Summary Judgment

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *See id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable fact finder to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party that fails to respond to any basis of a

4

motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment. *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048 at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

### B. § 1983 Claims

Title 42 U.S.C. § 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). "Qualified immunity shields public officials from liability for civil damages if their conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dillard v. O'Kelly*, 961 F.3d 1048, 1052 (8th Cir. 2020) (quotation omitted).

Claims brought pursuant to § 1983 can be against a defendant in their individual or official capacity. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id*. Individual capacity claims are those which are alleged against the individual actions of a defendant during the course of their duties. *Id*. Individual liability for a §1983 individual capacity claim "requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007). "To establish personal liability of the supervisory defendants, [a plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his

constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). A defendant's general responsibility of supervising a prison or detention facility is insufficient to establish individual involvement for a § 1983 claim. *See Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

### C. Review of R&R

A party may submit written objections to a magistrate judge's findings and recommendations. Fed. R. Civ. P. 72(b)(2). The district court must conduct a *de novo* review of "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections must be specific to trigger a *de novo* review, and the lack of specific objections permits a court to only review the recommendations for clear error. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). Complaints filed *pro se* are to be given a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 95 (2007). Likewise, the Court must apply a liberal construction when determining whether *pro se* objections to an R&R are specific. *See Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1990).

### III. DISCUSSION

The Court will examine the different grounds that Defendants offer for summary judgment. The Court will then address Judge Bryant's conclusion and recommendation regarding each, as well as any relevant objection submitted by any party.

### A. Administrative Remedies

Defendants argue that Plaintiff's claims must be dismissed because he failed to exhaust the administrative remedies available to him at the MCDC. ECF No. 64, p. 25-27. Defendants note that the Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust whatever administrative remedies are available prior to bringing any action under § 1983. Defendants

6

further note that Plaintiff did not complete the grievance procedures within the MCDC for any of his claims and conclude that his claims must be dismissed. Plaintiff responded, arguing that he attempted to complete the second stage of the MCDC grievance procedure after his extradition to Texas. ECF No. 82-1, p. 7. Plaintiff notes that the officials at the Texas detention center relayed to him that Captain Adams had closed the grievance case file once Plaintiff was moved out of the MCDC.

Judge Bryant concludes that Plaintiff did not fail to exhaust his administrative remedies. ECF No. 84, p. 7-9. Judge Bryant notes that Plaintiff provided the Court with his grievance file (ECF No. 82-4), which states that the grievance was closed because of his transfer out of the MCDC. Judge Bryant finds that this indicates Plaintiff attempted to utilize the procedures available to him but was prevented from doing so under the circumstances. Therefore, Judge Bryant recommends that Defendants be denied summary judgment on this ground.

No party has responded in opposition to this conclusion and recommendation. Finding that there is no clear error on the face of the record and that Judge Bryant's recommendation is sound, the Court adopts this recommendation. Defendants are not entitled to summary judgment based on any failure of Plaintiff to exhaust his administrative remedies under the PLRA.

**B. Personal Involvement**

Defendants argue that Plaintiff's claims must fail because there is no evidence in the record that Defendants Golden or Walker were personally involved in Plaintiff's alleged deprivations. ECF No. 64, p. 8-11. Defendants contend that there is no evidence in the record that either of the individual named Defendants took any actions directly connected to the assault against Plaintiff or had knowledge of any risk to Plaintiff. Without evidence connecting them to the alleged deprivation, Defendants conclude that Plaintiff's claims against the individual Defendants must be

7

dismissed. In response, Plaintiff broadly argues that Defendants were involved in the assault because evidence indicates they were aware that placing him in a cell with Anderson created a substantial risk to his safety. ECF No. 80, p. 6-10. In reply, Defendants generally argue that there is no evidence in the record suggesting that they had direct knowledge of any risk posed to Plaintiff. ECF No. 83, p 4-5.

Judge Bryant concludes that there is sufficient evidence in the record causally connecting Defendants Walker and Golden to Plaintiff's alleged deprivation. ECF No. 90, p. 9-10. Judge Bryant notes that Plaintiff has offered testimony that Defendant Golden was personally involved in assigning him to the cell with Anderson. Judge Bryant further determines that Plaintiff has offered evidence of Anderson's disciplinary history to suggest that Defendant Walker, as warden of the MCDC, would be aware of the threat he posed to other inmates. Therefore, Judge Byrant recommends that Defendants not be granted summary judgment on this ground.

No party has responded in opposition to this conclusion and recommendation. The Court finds that Judge Bryant's recommendation is sound regarding Defendant Golden. However, the Court finds that there is a complete lack of evidence in the record connecting Defendant Walker to Plaintiff's claim. Though Plaintiff alleges that Defendant Walker was aware of Anderson's disciplinary history, he has presented no evidence showing any direct knowledge on Walker's part. The entire evidentiary basis for Defendant Walker's connection to Plaintiff's claims is Walker's status as warden of the MCDC. The mere fact of a defendant's supervisory role or position is not a sufficient basis on its own to establish a personal connection to a § 1983 claim. *See Ouzts*, 825 F.2d at 1277. Accordingly, the Court adopts this recommendation in part. Defendants are not entitled to summary judgment based upon the lack of a factual connection between Defendant Golden and Plaintiff's alleged deprivation. Defendants are entitled to summary judgment for the

individual capacity claims against Defendant Walker because of the lack of any evidentiary connection between Defendant Walker and Plaintiff's claims.

Though Plaintiff does not object to this recommendation, he does object to the general conclusion that there could be sufficient evidence to causally connect Defendants to his claims without finding that Defendants are liable. ECF No. 90, p. 1. However, the requirement of a personal connection is only one aspect of a § 1983 claim and is meant to ensure that only individuals connected to the deprivation of any rights will be held liable for those deprivations. *See Clemmons*, 477 F.3d at 967.

### C. Placement in Administrative Segregation Claim

Reading Plaintiff's amended complaints together, he brings a claim alleging that he was improperly placed in administrative segregation without being subject to the regular disciplinary process.[2] ECF Nos. 7 & 13. Defendants do not address this claim in their motion for summary judgment.

Judge Byrant concludes that there is insufficient evidence in the record to sustain Plaintiff's claim that Defendant's violated his due process rights by placing him in administrative segregation. ECF No. 90, p. 10-12. Judge Bryant initially notes that certain changes to the nature of a detainee or inmate's confinement can result from a legitimate government interest separate from the desire to punish. Judge Bryant further notes that it is not disputed that an officer was injured when Plaintiff was evaluated at a hospital for chest pains. Judge Bryant then determines that there is no evidence in the record suggesting that Plaintiff was segregated after the hospital incident for any reason other than the desire to protect staff or other detainees while the incident

---

[2] Judge Bryant appropriately reads the amended complaints together to determine that Plaintiff alleges this claim, despite Defendants ignoring it in their motion for summary judgement. *See Owens v. Isaac*, 487 F.3d 561, 564 (8th Cir. 2007*)* (noting that a *pro se* inmate's successive complaints should be read together).

was investigated. Without evidence of the segregation being the result of punishment, Judge Byrant concludes that there cannot be a due process violation because no process is due in such a scenario. Therefore, Judge Bryant asserts that Plaintiff cannot prevail on his due process claim and recommends that it be dismissed with prejudice.

No party has responded in opposition to this conclusion and recommendation. Finding that there is no clear error on the face of the record and that Judge Bryant's recommendation is sound, the Court adopts this recommendation. Accordingly, Plaintiff's due process claim against Defendants will be dismissed with prejudice.

### D. Failure to Protect Claim – Individual Capacities

Plaintiff brings claims against Defendants Golden and Walker[3] in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement by failing to protect him from Anderson. ECF No. 12, p. 4-9. He contends that they were deliberately indifferent to the substantial risk that sharing a cell with Anderson posed to Plaintiff's safety. The Court will first broadly outline the relevant law for such a claim before examining the parties' arguments and Judge Bryant's recommendations.

A pretrial detainee's claims alleging unconstitutional conditions of confinement are subject to the Fourteenth Amendment instead of the Eighth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). However, those claims are analyzed under the same standards and protections offered to convicted inmates under the Eighth Amendment. *See id*. The Eighth Amendment's prohibition of cruel and unusual punishment requires humane conditions of confinement and imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). This duty extends

---

[3] The Court determined above that there is no factual connection between Defendant Walker and Plaintiff's claims. Accordingly, the Court will only evaluate Plaintiff's failure to protect claim against Defendant Golden.

to protecting inmates from violence at the hands of other inmates. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998) (citation omitted).

"Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another." *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (citation omitted). A failure to protect claim requires showing that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The first prong of this claim requires that there be "an 'objectively, sufficiently serious' deprivation, meaning that [the inmate] was incarcerated under conditions posing a substantial risk of serious harm[.]" *Schloelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). The second prong of the claim is a subjective test that requires that a defendant was subjectively aware of the substantial risk and was "deliberately indifferent" to that risk. *Id.* (citing *Farmer*, 511 U.S. at 834). "An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably." *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010).

**1. Substantial Risk of Harm**

Defendants do not directly argue that there was no substantial risk of harm to Plaintiff by being placed in a cell with Anderson. Rather, Defendants present an affidavit from Captain Adams asserting that there had been no previous incidents with Anderson threatening or attacking other inmates. ECF No. 63-1, p. 2. In response, Plaintiff argues that Anderson was charged with rape and had an extensive disciplinary history within the MCDC. ECF No. 82, p. 2-3. Plaintiff provides Anderson's disciplinary record, which shows that Anderson had been logged multiple times for fighting other inmates prior to his assault on Plaintiff. ECF No. 82-2. Plaintiff also contends that

11

the lack of adequate security staff on duty contributed to the danger. ECF No. 81, p. 12. Plaintiff submits MCDC supervisor reports that he contends is evidence of a lack of adequate staff patrolling the segregation units at the time of his assault. ECF No. 82-5.

Judge Bryant concludes that there is sufficient evidence in the record to create a genuine question regarding whether Plaintiff was subjected to an objectively serious risk of harm. Judge Bryant notes that Plaintiff has highlighted evidence in the record showing that Anderson was arrested for a violent crime, that he had a history of fighting and threatening other inmates, and that there was a lack of adequate staffing for the segregation units. Judge Bryant determines that this evidence could permit a finding that Plaintiff was subjected to a substantial risk of harm.

No party has objected to this conclusion. Finding that there is no clear error on the face of the record and that Judge Bryant's conclusion is sound, the Court accepts this conclusion. The Court will now proceed to Judge Bryant's conclusion and ultimate recommendation regarding Defendant Golden's subjective mental state.

**2. Deliberate Indifference**

Defendants argue that there is no evidence in the record indicating that they were aware of any risk to Plaintiff. ECF No. 64, p. 15-19. Defendants contend that Plaintiff cannot point to any evidence showing that Defendant Golden was on notice that Anderson posed a threat to Plaintiff's safety. Defendants also emphasize that Plaintiff's testimony shows he was not given any reason to expect or anticipate Anderson's attack during their time as cellmates. Defendants assert that this further demonstrates that they cannot be shown to have any awareness of whatever risk of harm that Anderson presented. Without any evidence of their awareness of the risk, Defendants conclude that Plaintiff is not capable of showing that they were deliberately indifferent to such a risk and that his failure to protect claim must be dismissed.

In response, Plaintiff generally argues that Anderson's history should have made Defendants aware of the substantial risk created when he was placed in the same cell as Anderson. ECF No. 81-1, pp. 1-2, 7-9. Plaintiff contends that Defendants had a duty to know the violent propensities of inmates such as Anderson. Plaintiff further contends that putting him in a cell with Anderson is sufficient evidence of Defendants' deliberate indifference to the risk Anderson posed to Plaintiff's safety. Thus, Plaintiff asserts that there is a genuine question of whether Defendants acted with a culpable mental state. In reply, Defendants again argue that Plaintiff has offered no evidence to suggest that any Defendant had actual knowledge of any risk to Plaintiff's safety. ECF No. 83. Defendants contend that the record can only offer speculation as to what knowledge the individual Defendants possessed regarding any danger posed by Anderson.

Judge Bryant concludes that there is insufficient evidence in the record to create a genuine question that Defendants acted with deliberate indifference. ECF No. 90, p. 16-17. Judge Bryant notes that a defendant's potential inference of a general risk of harm from a violent inmate requires some evidence that a defendant was exposed to the specific facts necessary to create that inference. Judge Bryant then determines that there is no evidence in the record showing that Defendants were ever aware of any specific facts informing them of the risk Anderson generally posed to other inmates. Without evidence showing that Defendants had actual knowledge of the risk Anderson posed, Judge Bryant concludes that there cannot be a genuine question as to deliberate indifference and that Plaintiff's failure to protect claim must fail. Judge Bryant then concludes that Plaintiff's failure to establish a claim for violation of his constitutional rights requires that Defendant Golden be granted qualified immunity. Therefore, Judge Bryant recommends that Plaintiff's individual capacity claim against Defendant Golden be dismissed with prejudice.

Plaintiff objected, generally reiterating his arguments that Anderson's disciplinary history creates a factual question as to Defendant's knowledge of and indifference to the risk to which they exposed Plaintiff. ECF No. 90, p. 1-3. Plaintiff asserts that Anderson's disciplinary history and his segregation from other inmates at the time of the assault is clear evidence that Defendants were aware of the risk he posed to other inmates. The Court finds that this objection is sufficiently specific to require a *de novo* review as to whether there is sufficient evidence to create a genuine question regarding deliberate indifference.

"Deliberate indifference requires 'more than mere negligence,' but does not require acting 'for the very purpose of causing harm or with knowledge that harm will result.'" *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) (quoting *Farmer*, 511 U.S. at 835); *see also Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) ("This court has repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference."). "[A] plaintiff is not required to allege and prove that the defendant or defendants specifically knew about or anticipated the precise source of the harm." *Krein v. Norris*, 309 F.3d 487, 491 (8th Cir. 2002). However, deliberate indifference can only exist when an official has actual knowledge of a significant risk, not when there is a significant risk that an official "should have perceived but did not[.]" *Farmer*, 511 U.S. at 837. "The question of whether the official knew of the substantial risk is a factual one 'subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007) (*quoting* Farmer 511 U.S. at 842).

The Court finds that there is not sufficient evidence in the record to create a genuine question of whether Defendant Golden was deliberately indifferent to the risk Anderson posed to Plaintiff. Evaluating the record in the light most favorable to Plaintiff, the only evidence in the record suggesting any direct knowledge regarding Anderson by Defendant Golden is the alleged

statement he made when he assigned Plaintiff to his segregation cell.⁴  At most, this only suggests that Defendant Golden could have known Anderson was also in that cell.  There is no evidence in the record that shows Defendant Golden had actual knowledge of Anderson's history.  Plaintiff does not allege or present evidence that Defendant Golden was personally involved with Anderson's prior infractions in the MCDC or was made specifically aware of them prior to his assault on Plaintiff.  Instead, Plaintiff seems to insist that knowledge of Anderson's history within the MCDC is imputed to all officials within the MCDC.  This is not adequate to create a genuine question under the deliberate indifference standard because Defendant Golden must have actually possessed the knowledge necessary to understand that a substantial risk to Plaintiff's safety existed.  *See Farmer*, 511 U.S. at 837-38; *and see Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) ("An inmate's history of violence alone is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates.").  Plaintiff's reliance on Anderson's disciplinary history might be able to create a genuine question under a general theory of negligence and what Defendants should have known, but general negligence is not the applicable standard for Plaintiff's claim.  *See Kulkay*, 847 F.3d at 643.

Courts have determined that there was not a genuine question regarding deliberate indifference when defendants had similar knowledge of a substantial risk.  *See Leal v. Wiles*, 734 Fed. App'x 905, 910 (5th Cir. 2018) (finding there could be no deliberate indifference where evidence only indicated that official carelessly failed to review information that would have informed official of risk faced by plaintiff); *Jones v. Wallace*, 641 Fed. App'x 665, 666 (8th Cir. 2016) (finding that plaintiff's general requests to officials for protective custody from another inmate could not establish that officials were deliberately indifferent to plaintiff's safety); *Holden*,

---

⁴ Plaintiff asserts that Defendant Golden ordered Plaintiff into cell Max Delta 901 "where he'll have no alibi."

663 F.3d at 341-42 (finding that defendants could not be deliberately indifferent to the risk another inmate posed to plaintiff when there was no evidence defendants knew of prior altercations involving that inmate); *Cohrs v. Norris*, No. 99-1571, 2000 WL 433986 at *1 (8th Cir. 2000) (finding that the occurrence of two assaults earlier in the night was not enough to create a fact question for deliberate indifference when plaintiff failed to present evidence that the defendants were aware of those assaults).

Without a genuine question regarding whether Defendant Golden was deliberately indifferent to the risk to Plaintiff's safety, Plaintiff cannot prevail on his claim that Defendant Golden violated his constitutional rights by failing to protect him from Anderson. *See Farmer*, 511 U.S. at 837-38. Plaintiff's failure to establish a claim for a constitutional violation against the individual Defendants entitles those Defendants to qualified immunity for Plaintiff's individual capacity claims. *See Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014). Accordingly, the Court agrees with Judge Bryant's conclusion and will adopt his recommendation to dismiss Plaintiff's individual capacity claims against Defendant Golden. *See Gainor v. Rogers*, 973 F.3d 1379, 1382 (8th Cir. 1992) (noting that qualified immunity is an immunity from suit rather than a defense to liability).

### E. Official Capacity Claims

Defendants argue that Plaintiff's official capacity claims must fail because he has not alleged that any official policy caused a violation of his rights. ECF No. 64, p. 21-25. Defendants emphasize that Plaintiff only alleges that his rights were violated as the result of Defendants not adhering to certain policies. Defendants contend that such allegations are the reverse of the actual requirement that a policy itself is the source of the alleged constitutional violation. With no allegations of a policy causing the violation of his rights and no evidence that any policy caused

the alleged violation of Plaintiff's rights, Defendants conclude that Plaintiff's official capacity claims must be dismissed.

In response, Plaintiff generally argues that Miller County is liable for failing to adhere to its official policies. ECF No. 81, p. 12-14. Plaintiff reiterates the allegations from his individual capacity claims that he should not have been placed in a cell with Anderson because of Anderson's history and that the MCDC's failure to have adequate personnel made the assault more likely. In reply, Defendants again argue that Plaintiff has completely failed to allege that a certain MCDC policy caused the alleged violation of his rights. ECF No. 83, p. 5.

Judge Bryant concludes that Plaintiff's official capacity claims must fail. ECF No. 84, p. 17. Judge Bryant notes that official capacity liability cannot exist if a court has already determined that no constitutional violation occurred. Considering the prior conclusion and recommendation regarding Plaintiff's individual capacity claims, Judge Bryant determines that official capacity liability is not possible for Plaintiff's claims. Though not addressed in this section of the R&R, Judge Bryant also notes that the PREA does not create any private cause of action. *Id*. at p. 5 n.6. Plaintiff objected to this recommendation, arguing that Defendants did not adhere to the PREA and their own staffing policies. ECF No. 90, p. 2-3.

The Court finds that Plaintiff's official capacity claims must fail. As Judge Bryant noted, the lack of any constitutional violation forecloses any potential official capacity claims. *See Ivey v. Audrain Cnty., Mo.*, 968 F.3d 845, 851 (8th Cir. 2020) (noting that a county escapes potential liability for an official capacity claim if it is found that no constitutional violation occurred). Further, Plaintiff's complaints never allege that a certain policy violated his constitutional rights. Plaintiff only alleges that Defendants failed to adhere to certain policies, which is an improper basis for official capacity claims. *See Gorman*, 152 F.3d at 914 (noting that an official capacity

17

claim requires showing that enforcement of or adherence to a policy caused the violation of rights). Accordingly, the Court will adopt Judge Bryant's recommendation to dismiss Plaintiff's official capacity claims with prejudice.

### IV. CONCLUSION

For the reasons stated above, the Court adopts the ultimate recommendation in Judge Bryant's Report and Recommendation (ECF No. 84), with certain substitutions in analysis by the Court. Accordingly, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 63) should be and hereby is **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 19th day of September, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge